**In re Samir AWALE d/b/a Awale Transport, Debtor.**

**No. 00–31903–7.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Jan. 28, 2002.[1]

Corey W. Haugland, James, Goldman & Haugland, P.C., Attorneys at Law, El Paso, TX, for Debtor.

E.P. Bud Kirk, Attorney at Law, El Paso, TX, for Associates.

1. This memorandum will be published.

## MEMORANDUM OF OPINION
## ON REAFFIRMATION

JOHN C. AKARD, Bankruptcy Judge.[2]

Samir A. Awale, the Debtor in these proceedings, brought an action against Associates Commercial Corporation (Associates) for violation of the automatic stay of § 362(a) of the Bankruptcy Code.[3] The court finds that the Debtor should have a judgment against Associates for $5,192.00 representing post-petition payments made by the Debtor to Associates.[4] All other relief requested by either party should be denied.[5]

### FACTS

Two witnesses were presented at trial: Mr. Awale and Chuck Wilson of Dallas, Texas, Bankruptcy Manager for Associates. Mr. Wilson had no contact with Mr. Awale during the negotiations that are the subject of this matter, so he could only testify from Associates' records. Bonnie L. Schlee, the person in Mr. Wilson's office with whom Mr. Awale negotiated, was not called as a witness.

A number of years ago, Mr. Awale drove a truck for Werner Enterprises. Inc. (Werner). During this time he financed his tractor (the motorized part of a truck to which trailers are attached for transportation) through Associates.[6] With Mr. Awale's consent, the payments on this tractor were deducted from the amounts due him from Werner and were paid by Werner to Associates for Mr. Awale's account. Mr. Wilson testified that it is a common practice for tractor payments to be made in this way. It insures that the payments are timely made to Associates and relieves the driver of having to worry about making the payments in the event he is on a long trip at the time the payments become due.

Subsequently, Mr. Awale left Werner and started his own proprietorship business, Awale Transportation. While operating that company he purchased several tractors and financed them with various lenders. He had two financing contracts with Associates; one covering two tractors and another covering one tractor. They were cross-collateralized so that a default under one contract constituted a default under the other.

Mr. Awale began having financial difficulties in his business. In early 2000 he entered into a workout agreement with Associates. He was unable to make all the payments due under that agreement. Another workout agreement was entered into, but again Mr. Awale was unable to make all the payments due under the agreement. By late August 2000, Mr. Awale determined that he would have to close Awale Transportation, file bankruptcy, and return to work for Werner. He wanted to keep one of the three tractors

---

2. United States Bankruptcy Judge for the Northern District of Texas (retired), recalled for service in the Western District of Texas.

3. The Bankruptcy Code is 11 U.S.C. § 101 et seq. References to sections are to sections of the Bankruptcy Code unless otherwise noted.

4. This matter was heard on December 19, 2000. The decision was announced at that time. The purpose of this memorandum is to set forth more fully the reasons for the decision.

5. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), (b), and the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc entered August 13, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

6. It is a common practice in the trucking industry for drivers to own the tractors that they drive. The drivers work for the trucking company as independent contractors. They are commonly referred to as owner/operators.

financed by Associates. He contacted the office of Associates where he was making his payments. He told Associates of his plans and which tractor he wished to keep. He was referred to the Dallas office that handles bankruptcy matters.

Upon contacting the Dallas office, he talked with Ms. Schlee. She stated that Associates would agree to a reaffirmation of the indebtedness on the tractor he wanted to keep. She stated that the payments could be made directly to Associates from Werner. Mr. Awale provided her with the vehicle number assigned to this tractor by Werner. Apparently Ms. Schlee contacted Werner because Werner deducted monies from its remittances to Mr. Awale for the benefit of Associates. Although Mr. Awale agreed to this procedure, neither Associates nor Werner required any written authorization from him for the deductions.

Mr. Awale apparently went to work for Werner about the time he filed for Bankruptcy on September 8, 2000. He promptly made arrangements to surrender the other two tractors to Associates as well as tractors financed with other lenders. Mr. Awale's bankruptcy schedules showed his intention to reaffirm the one tractor.

On September 21, 2000, Corey W. Haugland, Mr. Awale's attorney, wrote a letter to Associates at its Omaha, Nebraska office stating that Mr. Awale wanted to reaffirm on account 1381760 and furnishing a reaffirmation agreement. The letter pointed out that the deadline for filing reaffirmation agreements with the court was December 4, 2000. On November 8, 2000, Mr. Haugland received a telephone message telling him to contact "Bonnie" at a certain telephone number about a reaffirmation. There is no evidence that he did so.

On November 3, 2000 Ms. Schlee referred this matter to an El Paso attorney, E.P. Bud Kirk, to file a motion to lift the automatic stay so Associates could foreclose on the tractors it financed. The letter stated:

> We have received notice that the insurance on the collateral has lapsed. Mr. Awale has indicated he wants to reaffirm his debt on account 1381760. The Branch does not have a problem with this, but he will have to obtain insurance and bring the account current prior to reaffirming. If he can't bring the account current then we want to go for lift of stay on all of the collateral.

There is no evidence that Mr. Haugland's letter of September 21, 2000 was forwarded to Mr. Kirk.

The motion to lift stay filed November 21, 2000 recited that the payments on account 1381760 had not been made for August through November 2000. It also recited that the insurance had lapsed. The motion noted that Associates was willing to enter into a reaffirmation agreement if the account was brought current and the insurance provided.

On November 30, 2000, Mr. Awale filed an answer to the motion to lift stay in which he agreed to the lift of stay on two tractors and asked that the motion be denied as to the tractor he was reaffirming. The answer requested that the matter be set for hearing. On the same date Mr. Haugland wrote a letter to Mr. Kirk submitting a reaffirmation agreement and information to show that the payments had been deducted by Werner from amounts due to Mr. Awale. It was ultimately determined that Werner had been given both account numbers and some of the payments had been allocated to the account for the tractors which had been surrendered. Associates reallocated the post petition payments all to account 1381760. Mr. Haugland's letter acknowledges that the tractor must be insured, but there is

no evidence that he did anything further on that matter. At the hearing on this matter, Mr. Awale testified that Werner was deducting for two types of insurance, but there was no evidence that Associates was named a beneficiary or that it was the type of insurance that was required by Mr. Awale's contract with Associates.

In early December 2000, Mr. Kirk secured a 30–day extension of the time for reaffirmations. The motion noted that Mr. Haugland was out of town. On December 4, 2000, Mr. Haugland faxed to Mr. Kirk information supplied by Werner concerning deductions made for the benefit of Associates from monies due to Mr. Awale. Mr. Haugland said he felt that these payments brought the account current, or perhaps paid it in advance.

On December 13, 2000, a hearing was held on Associates motion for relief from stay. Neither Mr. Haugland nor Mr. Awale appeared. Mr. Kirk announced to the court that Associates was willing to allow reaffirmation on one tractor but secured an order lifting the stay on all three tractors. On December 15, Mr. Haugland wrote to Mr. Kirk acknowledging receipt of a copy of the order lifting stay. Mr. Haugland asked the amount necessary to bring the account current and for the reaffirmation agreement to be signed.

On January 11, 2001, Mr. Kirk wrote to Mr. Haugland stating that Associates had "now done its homework" on Mr. Awale's accounts and stating that because of substantial pre-bankruptcy defaults the amount necessary to bring this one account current was $2,036.56. The letter further stated:

> I have gone over this with the dealer involved. They do not want to have a reaffirmation under these circumstances.... You are welcome to call me to discuss this further, but I doubt the dealer will have a change of mind, even

if Awale paid more, to come to current status. (I have asked that question already as a hypothetical.)

By letter to Mr. Kirk dated January 24, 2001, Mr. Haugland tendered Mr. Awale's check payable to Associates for $2,036.56 and asked that the enclosed reaffirmation agreement be signed. Mr. Haugland stated that in the alternative, the enclosed check should be returned to Mr. Awale along with all funds paid to Associates after the filing of Mr. Awale's bankruptcy petition.

On February 12, 2001, Mr. Haugland confirmed by letter to Mr. Kirk their phone conversation of February 10, 2001 in which Mr. Haugland noted that Associates had been seeking to repossess Mr. Awale's tractor. Mr. Haugland stated that he and Mr. Awale had decided to surrender the tractor to Associates but demanded a return of all post-petition payments made to Associates. By letter of February 13, 2001, Mr. Kirk returned to Mr. Haugland Mr. Awale's $2,036.56 check and stated:

> The Omaha branch does not believe they should have to surrender the payments Awale sent in, prior to the decision not to consent to the partial reaffirmation.

At the December 19, 2001 hearing, Mr. Awale credibly testified that if Associates had not agreed to a reaffirmation on the tractor, he would have promptly surrendered the tractor to Associates and made other arrangements for a tractor to use while hauling for Werner. There is no evidence that the local dealer referred to in Mr. Kirk's letter of January 11, 2001 was a party to the contract between Associates and Mr. Awale or that Mr. Awale was ever advised that the local dealer's consent to the reaffirmation was required.

Mr. Awale commenced this action as a complaint for violation of the automatic stay of § 362(a), asserting that Associates

in effect garnished Mr. Awale's account with Werner. The complaint requested a return of the $5,192.00 Associates received post-petition from Mr. Awale, $550.00 in road tax Mr. Awale paid on the tractor, $791.00 in major repairs which Mr. Awale had done to the tractor, and $3,500.00 in attorney's fees. The complaint did not seek pre-judgment interest. Associates maintained that it was entitled to keep the funds received post-petition and denied it was liable for the other matters. Associates did not seek damages for depreciation in the value of the truck for the time it was used post-petition by Mr. Awale nor did Associates seek to recover in *quantum meruit* for the use of the tractor by Mr. Awale.

## CONCLUSIONS

■ The court finds that Associates, through Ms. Schlee, agreed to a reaffirmation of the contract on the one tractor at the time Mr. Awale and Ms. Schlee discussed the matter over the telephone. In reliance on that agreement, Mr. Awale allowed deductions from monies due to him by Werner. Those deductions fully paid the post-petition payments on the tractor. On several occasions Mr. Haugland furnished to Associates and its attorney proposed reaffirmation agreements and urged the signing of such agreements.

It was not until Mr. Kirk's letter of January 11, 2001 that Associates made known the amount it felt was necessary to pay the pre-petition delinquencies on the contract. The amount demanded was timely tendered to Associates' attorney by Mr. Awale.

In spite of Mr. Awale fully performing his end of the bargain, Associates chose to breach the agreement by refusing to sign the reaffirmation agreement. The court finds that the evidence does not support Associates' excuse that the local dealer would not agree to the reaffirmation. Associates induced Mr. Awale into making the post-petition payments by agreeing to a reaffirmation and then defrauded him by refusing to sign a reaffirmation agreement and refusing to return the post-petition payments to him. Mr. Awale is entitled to a judgment against Associates for $5,192.00, being the amount of the post-petition payments.

■ Mr. Awale did not seek recovery of the normal operating expenses of the tractor. However, he sought recovery of $791.00 in what he considered to be major repairs to the tractor. He also sought $550.00 in road tax paid on the tractor. In view of the fact that Associates did not seek damages for diminution in the value of the tractor, the court feels that Mr. Awale's request for repairs and road tax should be denied.

■ Mr. Awale's request for attorney's fees is based on § 362(h) for a violation of § 362(a), asserting that Associates in effect garnished Mr. Awale's funds at Werner. The testimony is that Mr. Awale agreed to the deduction in order to pay Associates the post-petition payments on the tractor. Thus a violation of § 362(a) was not established and an award of attorney's fees is not appropriate.

Order accordingly.[7]

## JUDGMENT

For the reasons stated in the Memorandum of Opinion on Reaffirmation (Memorandum) of even date herewith, the following Judgment should be entered:

---

7. This Memorandum shall constitute findings of fact and conclusion of law pursuant to Fed.R.Bankr.P. 7052 which is made applicable to contested matters by Fed.R.Bankr.P. 9014.

It is therefore Ordered, Adjudged, and Decreed, that:

1. Samir Awale have and recover of and from Associates Commercial Corporation the sum of $5,192.00 together with all costs of court in the proceeding described in the Memorandum.

2. All other relief requested by either party in the proceeding described in the Memorandum is denied.

3. This judgment shall bear interest at the Federal judgment rate.

4. Mr. Awale shall have execution, attachment, and all other writs and processes necessary for the collection of this judgment.

